# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,

Plaintiff and Respondent,

v.

RICHARD CURTIS MORRIS, JR.,

Defendant and Appellant.

S284751

Fourth Appellate District, Division Three
G061916

Orange County Superior Court
08CF1591

---

May 4, 2026

Justice Groban authored the opinion of the Court, in which Justices Corrigan, Liu, Kruger, and Evans concurred.

Chief Justice Guerrero filed a concurring opinion.

Justice Yegan[*] filed a dissenting opinion.

---

[*] Associate Justice of the Court of Appeal, Second Appellate District, Division Six, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

PEOPLE v. MORRIS

S284751

Opinion of the Court by Groban, J.

Defendant Richard Morris, Jr., appeals the denial of his petition for resentencing under Penal Code section 1172.6,[1] seeking to vacate his murder conviction under Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) (Stats. 2018, ch. 1015). Under the former felony-murder rule, when the defendant killed someone while committing an " 'inherently dangerous felony,' the defendant could be found guilty of the crime of murder, without any showing of 'an intent to kill, or even implied malice, but merely an intent to commit the underlying felony.' " (*People v. Strong* (2022) 13 Cal.5th 698, 704 (*Strong*).) In an attempt "to more equitably sentence offenders in accordance with their involvement in homicides" (Stats. 2018, ch. 1015, § 1(b)), Senate Bill 1437 "significantly narrowed the scope of the felony-murder rule." (*Strong*, at p. 703.)

Under section 187, the mens rea required for murder is malice aforethought. (§ 187, subd. (a).) Malice may be either express or implied. A deliberate intent to kill constitutes express malice. (§ 188, subd. (a)(1).) Implied malice is defined as acting without provocation or with an "abandoned and malignant heart" (§ 188, subd. (a)(2)), which a long line of cases

---

[1]    Undesignated statutory references are to the Penal Code.

has interpreted as acting with a conscious disregard for life. (See *People v. Soto* (2018) 4 Cal.5th 968, 974; *People v. Chun* (2009) 45 Cal.4th 1172, 1181.) Before Senate Bill 1437's amendment, in the case of a felony murder, the malice element could be supplied by proof of an intent to commit one of a subset of underlying felonies designated by statute. The amendment explicitly stated that malice "shall not be imputed to a person based solely on his or her participation in a crime" (§ 188, subd. (a)(3), as amended by Stats. 2018, ch. 1015, § 2), clarifying that the mere intent to commit one of those felonies was not, in itself, sufficient to establish that a nonkiller acted with malice.

Murder also requires an actus reus. (*People v. Concha* (2009) 47 Cal.4th 653, 660.) The record of conviction here does not establish whether Morris or his codefendant was the actual killer of the decedent. Rather, the issue in this case is whether Morris is precluded from making a prima facie showing for resentencing relief under section 1172.6 as a nonkiller aider or abettor of robbery and rape with intent to kill.

As relevant to this aider or abettor theory of liability, the amended felony-murder rule now states that when a person was not the actual killer, that person must have, "with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree." (§ 189, subd. (e)(2).) Morris claims that, when a nonkiller acts with an intent to kill, the nonkiller must aid the actual killer in the lethal act. The Attorney General contends, and the Court of Appeal agreed, that when a nonkiller acts with an intent to kill, the nonkiller need only aid in the underlying felony. We interpret the statutory language to mean just what it says: the phrase "aided . . . or assisted the actual killer in the commission of murder in the first degree"

2

(*ibid.*) requires proof the defendant aided or abetted the actual killer in the lethal act itself, and not just the underlying felony. We therefore reverse the Court of Appeal and remand for reconsideration in light of our opinion.

## I.  BACKGROUND

On January 1, 1987, Stockwell returned to his condominium with his girlfriend S.F.  As they entered the condominium, they were attacked by a man carrying a gun who was accompanied by another man.  Stockwell was handcuffed and Stockwell and S.F. offered the men money and jewelry.  One of the men took Stockwell upstairs.  The other man then took S.F. upstairs.  S.F. saw Stockwell facedown at the top of the stairs, where he was negotiating with the men.  The men took S.F. into a bedroom where they raped her.  After the men left in Stockwell's car, S.F. saw Stockwell on the floor, and realized he had been shot.  Swab samples were recovered from S.F. during a rape examination but the science of DNA matching for forensic use was just being developed at that time.  Later, retesting revealed that Morris's DNA was present in the swabs taken from S.F.[2]

In 2013, some 27 years after the crimes, a jury found Morris guilty of the first degree murder of Stockwell (§ 187, subd. (a)).  It also found true special circumstances for rape (§

---

[2]  This brief summary of the case is drawn from the Court of Appeal's opinion.  We rely on that opinion solely for the purpose of summarizing the background of this case; our consideration of whether Morris is entitled to relief under section 1172.6 is based on our review of the record of conviction.  (See, e.g., *People v. Delgadillo* (2022) 14 Cal.5th 216, 222, fn. 2.)

190.2, subd. (a)(17)(C)), robbery (§ 190.2, subd. (a)(17)(A)), and murder for financial gain (§ 190.2, subd. (a)(1)). The trial court found true a prior serious felony conviction and sentenced Morris to life without the possibility of parole, plus five years. In 2015, the judgment was affirmed on appeal.

Based upon the felony-murder special-circumstance jury instructions given in this case, the parties agree that the record of conviction establishes as a matter of law that Morris acted with the intent to kill. There is also no real dispute that, based upon the aiding and abetting for first degree felony-murder jury instruction given in this case, the record of conviction also establishes that, even if Morris did not fire the fatal shot, he aided and abetted the actual killer in the underlying felonies.

At the time of Morris's trial, under the former felony-murder rule, " 'when the defendant or an accomplice kill[ed] someone during the commission, or attempted commission, of an inherently dangerous felony,' the defendant could be found guilty of the crime of murder, without any showing of 'an intent to kill, or even implied malice, but merely an intent to commit the underlying felony.' " (*Strong, supra*, 13 Cal.5th at p. 704.)

After Morris's trial, with the passage of Senate Bill 1437, "the Legislature significantly narrowed the scope of the felony-murder rule." (*Strong, supra*, 13 Cal.5th at p. 703.) As amended by Senate Bill 1437, section 189, subdivision (e) now provides as follows: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven:

"(1)  The person was the actual killer.

"(2)  The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.

"(3)  The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of section 190.2."  (§ 189, subd. (e); see Stats. 2018, ch. 1015, §§ 3–4; Stats. 2022, ch. 58, § 10.)

In this way, the new felony-murder rule sets forth three theories of liability.  In this case, we address only the second theory of liability concerning a nonkiller who, with intent to kill, aids or abets "the actual killer in the commission of murder in the first degree."  (§ 189, subd. (e)(2).)

"Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended."  (*Strong, supra*, 13 Cal.5th at p. 708; see *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)  Pursuant to section 1172.6, when a petition complies with the statutory requirements, the court assesses whether the petitioner has made "a prima facie case for relief." (§ 1172.6, subd. (c).)  "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition."  (*Strong*, at p. 708.) However, if the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing to determine whether to vacate the conviction and resentence the petitioner. (§ 1172.6, subd. (d)(1).)

In 2022, Morris filed a petition for resentencing pursuant to section 1172.6. The trial court appointed counsel. After briefing and oral argument, the trial court summarily denied the petition at the prima facie stage. The court reasoned that the special circumstances jury instructions established that Morris acted with an intent to kill and so he was statutorily ineligible for section 1172.6 relief.

In a split decision, the Court of Appeal affirmed. The majority (Delaney, J., joined by O'Leary, P. J.) relied upon a different rationale than the trial court and concluded that Morris was precluded as a matter of law from obtaining section 1172.6 relief because the jury found Morris acted with an intent to kill and that Morris was engaged in committing the underlying felonies with the killer at the time the homicidal act took place. (*People v. Morris* (2024) 100 Cal.App.5th 1016, 1029–1030 (*Morris*).) The majority rejected Morris's argument that the actus reus required under section 189, subdivision (e)(2) requires aiding and abetting the actual killer in the lethal act, and not just the underlying felonies. (*Morris*, at pp. 1025–1029.) Justice Moore dissented, concluding that in a felony-murder prosecution of a nonkiller participant, the People are required to prove that the defendant aided the actual killer in the commission of first degree murder. (*Id.* at p. 1031 (dis. opn. of Moore, J.).)

The Courts of Appeal are in conflict on this issue. *People v. Kelly* (2024) 105 Cal.App.5th 162, review granted November 26, 2024, S287341 (*Kelly*) and *People v. Jackson* (2025) 110 Cal.App.5th 128, review granted June 11, 2025, S290457 (*Jackson*) found that section 189, subdivision (e)(2) requires proof the defendant aided the actual killer in the lethal act. *People v. Lopez* (2023) 88 Cal.App.5th 566 (*Lopez*), *People v.*

*Lopez* (2024) 104 Cal.App.5th 616, review granted November 13, 2024, S287162, *People v. Taito* (2025) 115 Cal.App.5th 694, review granted January 28, 2026, S294105, and the Court of Appeal below found that proof the defendant aided the underlying felony is sufficient.

We granted review.

## II.    DISCUSSION

There is no disagreement about the mens rea required under section 189, subdivision (e)(2), as both sides agree that the jury found that Morris acted with intent to kill. The disagreement involves the actus reus requirement, specifically, what acts are required to prove the actus reus under section 189, subdivision (e)(2). For the reasons explained below, we interpret the phrase "in the commission of murder in the first degree" consistent with its natural meaning to require proof the defendant aided or abetted the actual killer in the lethal act.[3]

---

[3]    In dissent, Justice Yegan relies upon several "facts of the instant case" originally drawn from the Court of Appeal opinion and trial testimony to conclude that Morris "did assist even under the new majority 'interpretation' of the felony-murder rule." (Dis. opn. of Yegan, J., post, at p. 4.) The dissent departs from the issue presented here. First, this opinion only addresses a discrete legal issue surrounding section 189, subdivision (e)(2) to determine whether Morris is precluded by the jury's factual findings in making a prima facie case for resentencing relief. At the prima facie stage, the inquiry is limited. "A court giving effect to" the jury's factual findings "does not engage in ' "factfinding involving the weighing of evidence or the exercise of discretion." ' " (*People v. Curiel* (2023) 15 Cal.5th 433, 465 (*Curiel*).) Second, as noted in footnote 10 below, on remand the Court of Appeal may address other legal issues surrounding this case to determine whether Morris is precluded from making a

While the jury found that Morris acted with the intent to kill, we are called upon to interpret the meaning of the amended language in the context of section 189, subdivision (e) as a whole. As we explain, the narrowed scope of the felony-murder rule applies in the following fashion. In the absence of proof that a defendant was the actual killer (§ 189, subd. (e)(1)), liability under a felony-murder theory can only attach under two circumstances (§ 189, subds. (e)(2) & (e)(3)). First, liability can attach to a participant in the perpetration or attempted perpetration of an enumerated felony in which a death occurs when that individual, with the intent to kill, aided or abetted the actual killer in commission of the lethal act. (§ 189, subd. (e)(2).) Second, liability can attach to a participant in the perpetration or attempted perpetration of an enumerated felony in which a death occurs when that individual "was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e)(3).) To clarify, an actual killer may still be liable for his murderous conduct if he committed the lethal act during commission of the underlying felony. (§ 189, subd. (e)(1).) An actual killer's intent to commit the felony establishes his malice, even if his lethal actus reus was accidental or if he did not intend to cause the victim's death.

---

prima facie case for resentencing relief. Then, even if Morris establishes a prima facie case on remand, there will be an evidentiary hearing to determine whether Morris is actually entitled to relief under the amended felony-murder rule, which extends to consideration of whether Morris was a major participant who acted with reckless indifference to human life. (§ 1172.6, subd. (d), referenced in § 189, subd. (e)(3).)

### A. The Plain Language of the Statute, when Viewed in Context, Requires a Nonkiller To Aid the Actual Killer in the Lethal Act

"The proper interpretation of a statute is a question of law we review de novo. [Citations] ' " ' "As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning." ' " ' . . . ' "We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' " ' " (*Lewis, supra,* 11 Cal.5th at p. 961.) " ' "If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." ' " (*People v. Prudholme* (2023) 14 Cal.5th 961, 975–976 (*Prudholme*).)

First, the plain language of the statute supports Morris's argument that section 189, subdivision (e)(2) requires a nonkiller to aid the actual killer in the lethal act. As noted above, the relevant statutory language states: "The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree." (*Ibid*.) Here, aiding "the actual killer in the commission of murder in the first degree" means just that. The commonsense meaning of aiding or abetting "the actual killer in the commission of murder in the first degree," involves aiding or

abetting the killing of a human being, and not just aiding another in the commission of an enumerated felony by an act that does not aid in the killing. (See *Jackson, supra*, 110 Cal.App.5th at pp. 166–167, review granted [collecting dictionary definitions of "murder"].) "When the words 'actual killer' are included in the phrase, so that it reads, 'aided, abetted . . . or assisted the *actual killer* in the *commission of murder* in the first degree,' the ordinary meaning of the statutory language is inescapable: assisting the killer in killing." (*Id.* at p. 168.) A person is not "the actual killer" unless they directly cause a death. To aid "the actual killer" is to aid the very act that defines that individual — the lethal act itself. The most natural reading therefore is that aiding "the actual killer" with the commission of murder implies aiding with the lethal act rather than aiding the person (who ends up committing the lethal act) with some felonious act. In this way, the language of section 189, subdivision (e) is "plain and unambiguous." (*Morris, supra*, 100 Cal.App.5th at p. 1031 (dis. opn. of Moore, J.).)

Second, reading section 189, subdivision (e)(2) in context with the remainder of subdivision (e) reinforces that the provision requires a nonkiller to aid the actual killer in the lethal act itself.[4] The fact that the Legislature used the phrase

---

[4] The cases Justice Yegan relies upon for a contrary reading of the statute (e.g., *People v. Dillon* (1983) 34 Cal.3d 441, 465; *People v. Washington* (1965) 62 Cal.2d 777, 781) are of little aid because they all interpret the *prior* felony-murder rule. (Dis. opn. of Yegan, J., *post*, at pp. 1, 3.) Though the dissent is of the view that "the traditional felony-murder rule has served California well" (*id.* at p. 1), the Legislature made clear that it wished to *alter* the prior felony-murder rule. (See, e.g., Stats. 2018, ch. 1015, § 1(b)) ["There is a need for statutory changes to

"underlying felony" elsewhere in section 189, but did not do so in subdivision (e)(2), shows that the Legislature knows how to use the term "underlying felony" in section 189 when that is the intent.  Subdivision (e)(3) provides for felony-murder liability when the defendant "was a major participant in the underlying felony and acted with reckless indifference to human life."  (§ 189, subd. (e)(3); see also *id.*, subd. (e) ["a felony"].)  Thus, the actus reus in subdivision (e)(3) clearly specifies the "underlying felony," while the language in subdivision (e)(2) merely refers to aiding or abetting "the commission of murder in the first degree."  The use of different phrases signals the Legislature intended to define different acts necessary to prove guilt under each theory.[5]  (See *People v. Trevino* (2001) 26 Cal.4th 237, 242

_____

more equitably sentence offenders in accordance with their involvement in homicides"].)  And while the dissent prefers that we should not have to " 'interpret' " what the Legislature intended (dis. opn. of Yegan, J., *post*, at p. 4), that is a task that our court routinely performs.  (See, e.g., *In re Ja.O.* (2025) 18 Cal.5th 271, 283; *Gutierrez v. Tostado* (2025) 18 Cal.5th 222, 231; *People v. Walker* (2024) 16 Cal.5th 1024, 1032.)

[5]      The concurrence notes that we should not rely on the Legislature's use of the phrase "underlying felony" elsewhere in section 189 because the Legislature also used the word "killing" elsewhere in the Penal Code and therefore the Legislature might have used that word here as well if that were its intended meaning.  (See conc. opn. of Guerrero, C. J., *post*, at p. 9.)  But the use of the phrase "underlying felony" was deployed as part of the same amendments to the same subdivision of the same code provision (Stats. 2018, ch. 1015, § 3) that produced the operative language here, thus providing a clear signal that the Legislature knew how to use the phrase "underlying felony" when it wanted to.  The examples provided by the concurrence

["When the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning"]; *Kelly, supra,* 105 Cal.App.5th at p. 172, review granted ["The use of different wording to convey the actus reus requirements for these subparagraphs is significant"].) "Looking at section 189, subdivision (e) in its entirety, 'it is clear the Legislature intended to draw a distinction between assisting first degree murder and assisting the underlying felony.' " (*Jackson, supra,* 110 Cal.App.5th at p. 168, review granted, quoting *Kelly,* at p. 172.)

Furthermore, the language of section 189, subdivision (e), which functions as a preamble that introduces the three subparts that follow, further supports Morris's interpretation. Specifically, subdivision (e) introduces the three theories of liability that follow by stating: "*A participant in* the perpetration or attempted perpetration of *a felony* listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: . . ." (§ 189, subd. (e), italics added.) In this way, subdivision (e)'s preamble already requires participation in a qualifying felony and it then lists three subparts with additional requirements for establishing felony-murder liability. Consequently, it follows that subdivision (e)(2) does not require merely "aiding" in the underlying felony because

_____

are more tangential, involving different subdivisions and code sections than the one at issue here and, in some instances, they relate to language that was enacted decades before the enactment of Senate Bill 1437. (See, e.g., Code Amends. 1873–1874, ch. 614, § 16, p. 427; Prop. 115, as approved by voters, Primary Elec. (June 5, 1990) § 9, eff. June 6, 1990 [amending § 189].)

then it would be redundant of subdivision (e)'s "participation" requirement.

The Attorney General's reading would mean that section 189, subdivision (e)(2)'s intent to kill requirement is the only way that subdivision (e)(2) differs from the preamble in subdivision (e).  However, "the subdivision proceeds for another 21 words, stating '... with the intent to kill, *aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.*' " (*Lopez, supra,* 88 Cal.App.5th at p. 585 (dis. opn. of Raphael, J.); see also *Kelly, supra,* 105 Cal.App.5th at p. 173, review granted.)   Under the Attorney General's theory, those 21 words are given no meaning if they mean the same as what was required to make the defendant a participant in the crime.[6] (See *Lopez,* at p. 585 (dis. opn. of Raphael, J.).)  This further supports

_____

[6]   The concurring opinion endeavors to ascribe additional meaning to these 21 words — an effort that the Attorney General wisely does not attempt.  (Conc. opn. of Guerrero, C. J., *post,* at pp. 10–11.)  The concurrence suggests that the language may exist in order to cover a seemingly limited and obscure circumstance, i.e., the "actual killer" language is perhaps not surplusage because it establishes that in cases where the defendant had: (1) the intent to kill and (2) aided a participant in an underlying felony that is logically and transactionally related to the killing (*People v. Cavitt* (2004) 33 Cal.4th 187, 193), *but* (3) somehow did so *without* aiding the actual killer, then the defendant would not be liable for murder under this subdivision.   It is hard to imagine such a fact pattern — intending to kill and also aiding a crime partner in an act related to killing, but doing so without aiding the actual killing — and we do not view this as the most " ' " ' " "plain and commonsense meaning" ' " ' " of the phrase.  (*Lewis, supra,* 11 Cal.5th at p. 961.)

Morris's position that a nonkiller defendant must aid or abet the actual killer in the lethal act, and not just the underlying felony, as the Attorney General's position would turn much of subdivision (e)(2) into surplusage. (See *People v. Griffin* (2004) 33 Cal.4th 1015, 1027 [" *the Legislature is not presumed to use statutory language in a sense which would render nugatory or redundant important provisions of a statute*' "].)

Finally, our interpretation of the language in a different but related context provides further support for Morris's interpretation. The financial-gain special circumstance contains similar phrasing as section 189, subdivision (e)(2) in that it applies to "[e]very person, not the actual killer, who, with the intent to kill, aids, abets, counsels, commands, induces, solicits, requests, or assists any actor *in the commission of murder in the first degree . . . .*" (§ 190.2, subd. (c), italics added.) When construing this language in the financial-gain special circumstance, this court held that " 'one who intentionally aids or encourages a person in the deliberate killing of another for the killer's own financial gain is subject to the special circumstance punishment.' " (*People v. Fayed* (2020) 9 Cal.5th 147, 202, quoting *People v. Freeman* (1987) 193 Cal.App.3d 337, 339.) In other words, though the concurrence is correct that the issue arose in the context of a financial-gain special-circumstance finding, it is nonetheless significant that this court construed the same "in the commission of murder in the first degree" (§ 190.2, subd. (c)) language in precisely the way we now read it — i.e., to require that one must aid the *lethal act* itself, and not just the underlying felony.

## B. The Attorney General's Reliance on *People v. Dickey* (2005) 35 Cal.4th 884 and the Felony-murder Special Circumstance Is Misplaced

The Attorney General relies upon *People v. Dickey* (2005) 35 Cal.4th 884, 900–901 (*Dickey*), where long before Senate Bill 1437, we interpreted "in the commission of murder in the first degree" language found in the felony-murder special circumstance. In *Dickey*, the court interpreted the felony-murder special circumstance in section 190.2, former subdivision (b), which applied to "[e]very person . . . found guilty of intentionally aiding, abetting . . . or assisting any actor in the commission of murder in the first degree . . . ." (§ 190.2, former subd. (b); see now § 190.2, subd. (c).) We interpreted this language to only require aiding or abetting the underlying felony and not the lethal act itself. (*Dickey*, at pp. 900–903.) The Attorney General now argues that the term "murder in the first degree" includes felony murder and the Legislature intended to import the meaning of the felony-murder special circumstance, as interpreted in *Dickey*, into the amended section 189, subdivision (e)(2). The Attorney General further argues the Legislature's adoption of the felony-murder special-circumstance language explains the surplusage and the phrasing "commission of murder in the first degree" in subdivision (e)(2). As discussed above, the Attorney General's interpretation would mean that the latter portion of subdivision (e)(2) — i.e., that the defendant "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree" — would be redundant of what is already in the preamble in subdivision (e). The Attorney General contends this surplusage is present in subdivision (e)(2) because the Legislature used the language

from the felony-murder special circumstance ("commission of murder in the first degree") as a way to signal that it was importing the same (broad) meaning that had been assigned to the phrase in the felony-murder special-circumstance context. However, the Attorney General's reliance on *Dickey* and the felony-murder special circumstance is misplaced because *Dickey* did not turn on any parsing of the language of section 190.2, subdivision (c), but on application of a background legal principle that is no longer good law.[7]

Specifically, Senate Bill 1437 abrogated the premise of *Dickey* by substantially changing the felony-murder rule. Our holding in *Dickey* relied upon the principle that "[a]ll persons aiding or abetting the commission of burglary or robbery are guilty of first degree murder when one of them kills while acting

---

[7] The Attorney General also relies upon language in *Strong* where we said section 189, subdivision (e)(3) "repurposes preexisting law governing felony-murder special-circumstance findings . . . to define eligibility for sentencing relief." (*Strong, supra,* 13 Cal.5th at p. 703; accord, *People v. Vang* (2022) 82 Cal.App.5th 64, 90 [interpreting the term "actual killer" in subd. (e)(1)].) However, *Strong* was interpreting subdivision (e)(3), which is not at issue in this case and is applicable to "a major participant in the underlying felony [who] acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e)(3).) As *Strong* explained, "[t]he major participant and reckless indifference phrases were 'derive[d] verbatim' from United States Supreme Court precedent concerning the permissible scope of capital punishment for felony murder." (*Strong,* at p. 705.) Furthermore, subdivision (e)(3) explicitly invokes the corresponding special circumstance provision in section 190.2, subdivision (d). (See § 189, subd. (e)(3).) Section 189, subdivision (e)(2) contains no similar language referencing the special circumstance.

in furtherance of the common design." (*Dickey*, *supra,* 35 Cal.4th at p. 900.) Applying that rule, we concluded that section 190.2, former subdivision (b) was "not helpful to [the] defendant because, under the felony-murder doctrine, he *was* found guilty of aiding or abetting first degree murders." (*Ibid.*) However, Senate Bill 1437 "narrows the felony-murder rule significantly by limiting it to the actual killer and to accomplices who either intend to kill and aid in the murder or play a major role in the underlying felony and act with reckless indifference to human life." (*Jackson*, *supra,* 110 Cal.App.5th at p. 173, review granted.) This change abrogates *Dickey*'s reasoning because now "[i]t is no longer true that all persons who aided in a burglary or robbery are guilty of murder when one of them kills during that offense. Whether such a participant is liable for murder is what the jury is now charged with deciding when it applies section 189(e)." (*Lopez*, *supra,* 88 Cal.App.5th at p. 587 (dis. opn. of Raphael, J.); see also *Jackson*, at p. 172.) Thus, the question we are presented with here is which individuals remain liable for first degree murder. To allow the now-outdated legal principle informing *Dickey* to dictate our decision here would be circular and inconsistent with the very purpose of Senate Bill 1437's changes to the felony-murder rule.[8]

---

[8] The Court of Appeal further relied upon language from our decision *Curiel, supra,* 15 Cal.5th at p. 433 where we said that if a jury "made findings on all of the other elements supporting felony murder under section 189 as amended, including (1) the commission or attempted commission of a felony enumerated in that statute and (2) the death of a person during the commission or attempted commission of the enumerated felony" and the "jury additionally found intent to kill," that "would conclusively establish all of the elements of felony murder under current

### C. There Is Nothing in the Legislative History of Senate Bill 1437 That Persuades Us To Adopt a Different Result

The statutory language clearly demonstrates that section 189, subdivision (e)(2) requires proof the defendant aided or abetted the actual killer in the lethal act itself, and not just the underlying felony. (See *Prudholme, supra,* 14 Cal.5th at pp. 975–976 [" ' "If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend" ' "].) As a result, we need not address the Attorney General's arguments pertaining to legislative history. In any event, the legislative history does not aid the Attorney General's argument. (See *People v. Rhodius* (2025) 17 Cal.5th 1050, 1063 [" '[E]ven if we considered the language and structure of [Senate Bill 1437] to be susceptible to the Court of Appeal's . . . reading,' and thus employed ' " 'other aids, such as the statute's purpose, legislative history, and public policy' " ' (*Lewis, supra,* 11 Cal.5th at p. 967), we would find nothing in that inquiry that persuades us to adopt a different conclusion"].)

The Attorney General argues that the legislative history shows that Senate Bill 1437 did not change the actus reus for

_____

law." (*Id.* at p. 464.) However, *Curiel* addressed the mental state required in a direct aiding and abetting case, and was not a felony-murder case. (See *Kelly, supra,* 105 Cal.App.5th at p. 173, review granted.) We also made clear that our holding was limited to the specific facts and circumstances that were presented in that case. (See *Curiel*, at p. 467 ["we need not decide whether the jury necessarily found the requisite actus reus because we conclude the jury did not necessarily find the requisite mens rea for direct aiding and abetting liability"]; see also *id.* at p. 470, fn. 7.)

felony-murder liability as an aider and abettor with intent to kill because the bill's primary purpose was to bar the imputation of malice to aiders and abettors to murder. The Attorney General relies upon the legislative finding that "[i]t is necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1(f).) The Attorney General emphasizes that the focus for the second category of persons in this expressed purpose is on the mens rea and not the actus reus. The Attorney General also relies upon various legislation resolutions and reports highlighting the need to bar the imputation of malice. (See Sen. Conc. Res. No. 48, Stats. 2017 (2017–2018 Reg. Sess.) res. ch. 175; Sen. Com. on Public Safety, Analysis of Sen. Bill 1437 (2017–2018 Reg. Sess.) as introduced Feb. 16, 2018, p. 4 ["Under this bill, prosecutors would no longer be able to substitute the intent to commit a felony for the intent to commit murder"].)

While barring the imputation of malice was certainly an issue that the Legislature sought to address, the legislative findings and legislative history of Senate Bill 1437 reflect that the bill was also directed at the actus reus requirement and, more generally, at making a broad ameliorative change to more equitably sentence offenders. The legislative findings expressed a need for reform and "for statutory changes to more equitably sentence offenders *in accordance with their involvement in homicides*." (Stats. 2018, ch. 1015, § 1(b), italics added.) The legislative findings note that "a person should be punished *for his or her actions* according to his or her own level of individual

19

culpability." (*Id.* § 1(d), italics added.) Furthermore, the legislative findings explained that "[a] person's culpability for murder must be premised upon that person's *own actions* and subjective mens rea." (*Id.* § 1(g), italics added.) Legislative reports on Senate Bill 1437 further confirm that the Legislature was concerned with both the actus reus and mens rea. (See, e.g., Sen. Com. on Public Safety, Analysis of Sen. Bill 1437, *supra*, as introduced Feb. 16, 2018, p. 9 ["those who . . . cause a death will still be liable for murder. S.B. 1437 simply reduces the unfairness of the felony-murder rule by refocusing attention on the intent and actions of the participants"]; Assem. Com. on Pub. Safety, Analysis of Sen. Bill 1437 (2017–2018 Reg. Sess.) as amended May 25, 2018, p. 4 [the bill " 'seeks to restore proportional responsibility in the application of California's murder statute reserving the harshest punishments for *those who intentionally planned or actually committed the killing*' " (italics added)].)

The legislative history thus shows that the Legislature was interested in addressing both the acts and intent required to prove felony murder, and it certainly does not demonstrate that Senate Bill 1437 was concerned only with barring the imputation of malice to aiders and abettors to murder.

### D. Interpreting Section 189, Subdivision (e)(2) To Require a Nonkiller To Aid the Lethal Act Itself Would Not Lead to Illogical Results

The Attorney General argues that Morris's interpretation of section 189, subdivision (e)(2) would be illogical because it would require both a greater mens rea and actus reus than required under subdivision (e)(3). Under the amended felony-murder rule, there are three theories of liability: "[t]he person was the actual killer" (§ 189, subd. (e)(1)); "[t]he person was not

the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree" (*id.*, subd. (e)(2)); and "[t]he person was a major participant in the underlying felony and acted with reckless indifference to human life" (*id.*, subd. (e)(3)). The Attorney General argues that this structure of section 189, subdivision (e) is most logically understood as increasing the actus reus requirement for felony murder as the mens rea decreases. The Attorney General believes that as the reader progresses from subdivision (e)(1) to subdivision (e)(3), the actus reus required becomes progressively more onerous and the mens rea becomes less onerous. The Attorney General further contends that Morris's interpretation would mean that both a greater mens rea is required under subdivision (e)(2) than under subdivision (e)(3) — an intent to kill rather than reckless indifference to human life — and also a greater actus reus — aiding the lethal act itself rather than a major participant in the underlying felony.

It may be, as the Attorney General contends, that the Legislature was trying to create an inversely proportional relationship between actus reus and mens rea for the three theories of felony-murder liability in subdivision (e). However, it may also be that the Legislature simply was trying to create different paths to liability in order to better accord with an individual's culpability depending on the circumstances of the case. (See Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1437, *supra,* as amended May 25, 2018, p. 4 [" 'restor[ing] proportional responsibility in the application of California's murder statute reserving the harshest punishments for those who intentionally planned or actually committed the killing' "].)

This conclusion is consistent with the language the Legislature enacted. And it is not illogical to conclude that the Legislature sought to capture three different scenarios of potential liability — as opposed to create a perfect, inverse sliding scale of actus reus and mens rea culpability — especially since there is nothing in the legislative history that reflects such an intent.

Furthermore, even adopting Morris's interpretation of the statute, section 189 still does not reflect, as the Attorney General suggests, a decreasing overall level of culpability when progressing through the three theories of felony murder in subdivision (e). Indeed, section 189, subdivision (e)(2) does not necessarily require a heightened level of culpability when compared to subdivision (e)(3). Rather, the level of culpability for a defendant charged with felony murder under subdivision (e)(2) versus a defendant charged under subdivision (e)(3) depends on the circumstances of the case. The court in *Kelly* explained there could be situations where "the defendant offers minor assistance to a qualifying felony not expecting (but secretly hoping) it will result in the death of another human being. Under that scenario, the defendant would be liable for felony murder under the [Attorney General's] interpretation of section 189(e)(2) if a death occurred during the felony, even if he was not present at the scene of the killing. But, despite harboring a malicious mindset, he could actually be less culpable than someone whose participation in the felony was so considerable that it amounted to reckless indifference to human life for purposes of section 189(e)(3)." (*Kelly*, *supra*, 105 Cal.App.5th at p. 175, review granted; see also *Morris*, *supra*, 100 Cal.App.5th at p. 1034 (dis. opn. of Moore, J.) [describing a "hypothetical bank robbery involving three coparticipants" to show how the three theories of felony-murder

liability in subd. (e) apply].) Thus, there may be situations where a person convicted under subdivision (e)(2) has greater culpability than a person convicted under subdivision (e)(3), and vice versa, but there is nothing illogical about adopting Morris's interpretation of subdivision (e)(2).

The Attorney General similarly argues that Morris's reading of section 189, subdivision (e) would render subdivision (e)(2) superfluous to subdivision (e)(3), which addresses felony murder as a major participant with reckless indifference to human life. However, for similar reasons, this is not so. Subdivision (e)(2) is not superfluous because "not everyone who directly aids and abets a murder [under subdivision (e)(2)] is liable for murder as a major participant under that section." (*Kelly*, *supra*, 105 Cal.App.5th at p. 176, review granted.) Rather, in order to satisfy the major participant element in subdivision (e)(3), the defendant's personal involvement must be "substantial, greater than the actions of an ordinary aider and abettor to an ordinary felony murder . . . ." (*People v. Banks* (2015) 61 Cal.4th 788, 802; accord, *Kelly*, at p. 176.) Thus, even when interpreting subdivision (e)(2) to require aiding the actual killer in the lethal act itself, subdivision (e)(3) still has independent meaning based upon its heightened requirements for the major participant element.

The Attorney General next argues that Morris's reading of section 189, subdivision (e) would render subdivision (e)(2) superfluous to direct aiding and abetting murder under standard aiding and abetting law. However, contrary to the Attorney General's claim, interpreting subdivision (e)(2) to require aiding the actual killer in the lethal act itself is not the same as requiring proof the defendant directly aided and abetted murder. Rather, in order for an accomplice to be liable

for directly aiding and abetting a murder, the accomplice must " 'aid[] the commission of that offense with "knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends." ' " (*Curiel, supra,* 15 Cal.5th at p. 463.) In contrast, subdivision (e)(2) simply requires the defendant, with the intent to kill, to "aid[], abet[], counsel[], command[], induce[], solicit[], request[], or assist[] the actual killer in the commission of murder in the first degree." (§ 189, subd. (e)(2).) Although subdivision (e)(2) includes "aid[]" or "abet[]" language, it does not contain all the elements of direct aiding and abetting murder because, even under Morris's interpretation of subdivision (e)(2), it does not require the same knowledge requirements as direct aiding and abetting. Specifically, subdivision (e)(2) requires the accomplice have the intent to kill, while direct aiding abetting requires the accomplice have " ' "*knowledge of the direct perpetrator's unlawful intent* and [with] an intent to assist in achieving those unlawful ends." ' " (*Curiel*, at p. 463, italics added.) Morris's reading of section 189 does not render subdivision (e)(2) superfluous to direct aiding and abetting murder because subdivision (e)(2) requires the accomplice to have the intent to kill but does not require the accomplice to know the direct perpetrator's intent.

Finally, the Attorney General argues Morris's position is illogical because it would require a higher level of culpability to establish a first degree felony-murder conviction than to establish eligibility for the death penalty with a true finding on a special circumstance. As an initial matter, and as the Attorney General acknowledges, there is no constitutional impediment to such a scheme. A scheme narrowing eligibility *at the guilt phase* as opposed to the penalty phase is not

constitutionally proscribed when, as it does here, it narrows the class of death-eligible defendants to first degree felony murderers from all potential murder defendants. (See *Lowenfield v. Phelps* (1988) 484 U.S. 231, 246 ["the 'narrowing function' was performed by the jury at the guilt phase when it found defendant guilty of three counts of murder under the provision that 'the offender has a specific intent to kill or to inflict great bodily harm upon more than one person' "].) As one Court of Appeal explained, "our role is not to ask whether a given special circumstance narrows an already-narrowed subset of murderers (first degree murderers) who have been found guilty of murder under one particular theory of liability (felony murder). Rather, our task is to determine whether the state's capital punishment law genuinely narrows the entire class of murderers to a subclass of death-eligible murderers." (*People v. Wilkins* (2021) 68 Cal.App.5th 153, 165, italics omitted.) In this case, the felony-murder special circumstance "makes a subclass of murderers — first degree felony murderers — death eligible. It does not apply to other murderers such as second degree murderers or simple murderers. Because the statute renders a mere subset of murderers eligible for the death penalty, it sufficiently narrows the overall class of murderers as required by the Eighth Amendment." (*Ibid.*; accord, *People v. Landry* (2016) 2 Cal.5th 52, 108 ["There is no requirement at the eligibility stage that a narrowly circumscribed class of defendants for whom the death penalty is reasonably justified be further distinguished according to the particular circumstances that led to their eligibility"].)

Furthermore, to the extent that the Attorney General argues that it would be illogical for the Legislature to have intended to require more culpability for a felony-murder

conviction than for a special circumstance finding, the Attorney General's argument assumes that a special circumstance finding requires less culpability than a felony-murder conviction. However, the special circumstance finding is dependent on the defendant aiding *murder in the first degree under current law.* (See § 190.2, subd. (c) ["Every person, not the actual killer, who, with the intent to kill, aids, abets, counsels, commands, induces, solicits, requests, or assists any actor in the commission of *murder in the first degree . . .*" (italics added)].) In order to support that a special circumstance finding requires less culpability than a first degree murder verdict, the Attorney General appears to assume that *Dickey* continues to articulate the controlling standard for the special circumstance under section 190.2, subdivision (c). In *Dickey*, evidence that a defendant "planned and participated in the burglaries and robberies" would permit a first degree murder verdict upon which the special circumstance finding was premised. (*Dickey*, *supra*, 35 Cal.4th at p. 900.) However, under the amended felony-murder rule, such evidence, without more, is no longer sufficient for a first degree murder verdict. And if a defendant who merely aided or abetted in the underlying felony cannot be liable for first degree murder, then the defendant also cannot be liable for the special circumstance finding under section 190.2, subdivision (c) on the ground that the defendant committed first degree murder. Finally, the Legislature is not required to amend the felony-murder rule and the special circumstance at the same time. Indeed, a Legislature interested in reforming the felony-murder rule can first amend the provisions that directly address the felony-murder rule and then later, if it chooses, amend related special circumstance provisions. (See, e.g., *People v. Hardin* (2024) 15 Cal.5th 834, 866 ["We are also

mindful that the legislative branch is entitled to proceed incrementally, so long as it proceeds rationally, in 'walking [the] tightrope' of the political process"].)

## III.   CONCLUSION

We hold that section 189, subdivision (e)(2) requires that the nonkiller aid or abet the actual killer in the lethal act itself, and not just the underlying felony.[9]  We reverse the Court of Appeal and remand for reconsideration in light of our opinion. Morris has not had a chance to present evidence of his culpability at a section 1172.6 evidentiary hearing.  On remand, the Court of Appeal may consider the Attorney General's remaining arguments in order to determine whether Morris has made the necessary prima facie showing for an evidentiary hearing.[10]  (§ 1172.6, subd. (d)(1).)

---

[9]   We disapprove Courts of Appeal reaching the opposite conclusion in *People v. Lopez, supra*, 88 Cal.App.5th at page 566, *People v. Lopez, supra*, 104 Cal.App.5th at page 616, review granted, *People v. Taito, supra*, 115 Cal.App.5th at page 704, review granted.

[10]   The Attorney General argues the jury's true finding as to the financial-gain special circumstance "demonstrates that Morris aided and abetted the killing itself with intent to kill and is thus guilty of murder even under the interpretation of section 189, subdivision (e)(2), that Morris advances."  Furthermore, the Attorney General also argues, "in addition to felony murder, the jury's true finding as to the financial gain special circumstance encompassed all the elements of direct aiding and abetting."  We do not address these arguments here and the Court of Appeal may address them on remand.

**GROBAN, J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**EVANS, J.**

PEOPLE v. MORRIS

S284751


Concurring Opinion by Chief Justice Guerrero


I join in the majority's holding that Penal Code section 189, subdivision (e)(2),[1] requires a participant in a felony who is not the actual killer to aid or assist in the killing itself, or the lethal act, that occurs during the commission of the felony. I write separately to explain that unlike the majority, I do not find the language of subdivision (e)(2) " 'plain and unambiguous.' " (Maj. opn., *ante*, at p. 10.) In my view, the majority's interpretation stands in relative equipoise to the interpretation advanced by the Attorney General, the Court of Appeal, and several other courts that have considered the issue — that a felony participant aids an actual killer in the commission of murder in the first degree by aiding the killer in the underlying felony. (See *People v. Taito* (2025) 115 Cal.App.5th 694, 704, review granted Jan. 28, 2026, S294105 (*Taito*); *People v. Lopez* (2024) 104 Cal.App.5th 616, 621, review granted Nov. 13, 2024, S287162; *People v. Morris* (2024) 100 Cal.App.5th 1016, 1020, review granted July 17, 2024, S284751 (*Morris*); *People v. Lopez* (2023) 88 Cal.App.5th 566, 578–579 (*Lopez*).) Our normal interpretative aids, such as the structure and purpose of the statute and the legislative history accompanying Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), do not enable us to conclude with any degree of certainty which actus reus the Legislature sought to

---

[1]    Undesignated statutory references are to the Penal Code.

require for felony participants who are not themselves actual killers, but act with intent to kill. Where, as here, two reasonable interpretations of a criminal statute stand in relative equipoise, the rule of lenity operates to " ' "giv[e] the defendant the benefit of every reasonable doubt on questions of interpretation." ' " (*People v. Nuckles* (2013) 56 Cal.4th 601, 611 (*Nuckles*).) Applying the rule of lenity, I would adopt the interpretation more favorable to defendant in this case, and on that basis join in the majority's interpretation of subdivision (e)(2).

## I.

As the majority notes, the Legislature significantly narrowed the scope of the felony-murder doctrine in adopting Senate Bill 1437. Section 189, subdivision (e), now provides that "[a] participant in the perpetration or attempted perpetration of [an enumerated felony] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, . . . or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

" ' " ' " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning' " ' " ' " (*People v. Walker* (2024) 16 Cal.5th 1024, 1032 (*Walker*)), and determining "whether the

language of the statute is ambiguous" (*People v. Dieck* (2009) 46 Cal.4th 934, 940). "A statutory provision is ambiguous if it is susceptible of two reasonable interpretations." (*Ibid*.) " ' " ' " 'If the statutory language permits more than one reasonable interpretation, [we] consider other aids, such as the statute's purpose, legislative history, and public policy' " ' " ' " to resolve the ambiguity. (*Walker*, at p. 1032.)

The pertinent question is what it means for a felony participant to aid or assist an actual killer "in the commission of *murder in the first degree*," for purposes of section 189, subdivision (e)(2). (Italics added.) The majority concludes that the commonsense meaning involves aiding the killing of a human being and not just aiding in the commission of an enumerated felony. (Maj. opn., *ante*, at pp. 9–10.) The majority is correct that this is a reasonable interpretation of the statute, but I respectfully disagree that it is the *only* reasonable interpretation. The Attorney General's interpretation, that aiding in the commission of murder in the first degree includes aiding in the underlying felony, is also reasonable.

As the Court of Appeal explained, " 'murder in the first degree' " is a "legal term of art" specifically defined in the Penal Code. (*Morris*, *supra*, 100 Cal.App.5th at p. 1025; see *Taito*, *supra*, 115 Cal.App.5th at p. 704, review granted; *Lopez*, *supra*, 88 Cal.App.5th at p. 578.) Where a legislative body uses a term in a statute that "has developed a particular meaning in the law, we generally presume the legislative body used the term in that sense rather than relying on ordinary usage." (*In re Friend* (2021) 11 Cal.5th 720, 730.) Similarly, where " 'the Legislature has provided an express definition of a term, that definition ordinarily is binding on the courts.' " (*People v. Canty* (2004) 32 Cal.4th 1266, 1277.)

"[M]urder of the first degree" is defined in subdivision (a) of section 189 as murder[2] that is "perpetrated" by one of several enumerated means. This includes murder "committed in the perpetration of, or attempt to perpetrate," one of several enumerated felonies. (§ 189, subd. (a).) Thus, for purposes of California law "murder in the first degree" does not simply equate to killing a human being. (§ 189, subd. (e).) It is the fact that the killing is perpetrated by a specific means that qualifies the killing as murder in the first degree, and one of those means is committing a felony during which the killing occurs.

Thus, for purposes of subdivisions (a) and (e)(2) of section 189, a person with the specific intent to kill may reasonably be said to aid or assist an actual killer in the commission of murder in the first degree in one of two ways: (1) by aiding in the killing, i.e., the act that causes the death; or (2) by aiding in the commission of the felony that effects such a killing, i.e., the act that qualifies the killing as a first degree murder. The interpretation turns on which element or elements of first degree murder the Legislature intended to require the felony participant to aid in. The Legislature may, as the majority asserts, have intended to require the participant to aid in the killing element. However, as the Attorney General and other courts have recognized, the Legislature may have also intended to require the participant to aid in *either* the killing element or the commission-of-a-qualifying-felony element. Because subdivision (e)(2) of section 189 is reasonably

---

[2] Murder is defined in section 187, subdivision (a), as "the unlawful killing of a human being, or fetus, with malice aforethought."

susceptible to either interpretation, the statute is inherently ambiguous.

Consider the facts of this case. Richard Morris, Jr., was one of two participants in a robbery during which a victim was shot and killed. There is no dispute that the jury necessarily found Morris acted with the specific intent to kill. Assuming Morris's coparticipant was the shooter, Morris may reasonably be said to have aided or assisted his coparticipant in murder in the first degree if, *with the specific intent to kill*, he either (1) helped his coparticipant shoot the victim, or (2) helped his coparticipant perform the robbery during which his coparticipant committed the shooting. In either case, Morris's assistance would have contributed to his coparticipant's commission of murder *in the first degree* for purposes of how the Penal Code defines the term. Indeed, as one lower court noted, the Legislature may have reasonably determined that "[d]efendants who aid a qualifying felony with an *intentional plan* to kill" are equally deserving of the harshest punishments as those that in fact commit the killing. (See *Lopez, supra*, 88 Cal.App.5th at p. 579.)

## II.

Because the language of section 189, subdivision (e)(2) is ambiguous, the next step is to turn to our interpretative aids to resolve the ambiguity, including canons of statutory construction (*McCarther v. Pacific Telesis Group* (2010) 48 Cal.4th 104, 110) and the statute's purpose, legislative history, and public policy (*Walker, supra*, 16 Cal.5th at p. 1032). The Attorney General relies largely on our prior decision in *People v. Dickey* (2005) 35 Cal.4th 884 (*Dickey*) in support of his proposed interpretation. The majority, by contrast, concludes

that various structural aspects of section 189, subdivision (e), as well as our prior opinion in *People v. Fayed* (2020) 9 Cal.5th 147, 202 (*Fayed*), support its interpretation. In my view, the arguments offered by the Attorney General and the majority lend some support to each of the competing interpretations, but do not pull strongly in either direction.

The Attorney General's reliance on *Dickey* implicates one of our well-established canons of construction: "When legislation has been judicially construed and subsequent statutes on a similar subject use identical or substantially similar language, the usual presumption is that the Legislature intended the same construction, unless a contrary intent clearly appears." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1135; see *People v. Licas* (2007) 41 Cal.4th 362, 367 [" '[T]he Legislature is deemed to be aware of existing laws and judicial decisions in effect at the time legislation is enacted and to have enacted and amended statutes " 'in the light of such decisions as have a direct bearing upon them' " ' "].)

In *Dickey*, we interpreted language in section 190.2, the special circumstance statute, that is substantially similar to section 189, subdivision (e)(2). Section 190.2, subdivision (a), sets forth various special circumstances that, if found true, set the penalty for first degree murder as death or life in prison without the possibility of parole (including that the murder was a felony murder, § 190.2, subd. (a)(17)). Subdivision (c) then provides as follows: "Every person, not the actual killer, who, with the intent to kill, aids, . . . or assists any actor in the commission of murder in the first degree shall be punished by death or imprisonment in the state prison for life without the possibility of parole if one or more of the special circumstances enumerated in subdivision (a) has been found to be true . . . ."

As the text indicates, both subdivision (c) of section 190.2 and subdivision (e)(2) of section 189 apply to nonkillers who, with intent to kill, aid or assist "in the commission of murder in the first degree."

In *Dickey*, the defendant challenged a jury's felony-murder special-circumstance finding under the predecessor statute to section 190.2, subdivision (c).[3] The defendant argued, like Morris argues here, that the statute's use of the term "aiding . . . in the commission of murder in the first degree" required the prosecution to prove he aided or abetted the killing itself, rather than merely aided or assisted in the underlying felonies. (*Dickey*, *supra*, 35 Cal.4th at p. 900.) We rejected the defendant's argument, expressly holding that section 190.2, former subdivision (b) required only that the defendant aid or assist in the underlying felony. (*Dickey*, at pp. 900–901.)

Because section 189, subdivision (e)(2) so closely mirrors section 190.2, we might normally assume, as the Attorney General argues, that the Legislature intended to incorporate our interpretation of aiding "in the commission of murder in the first

---

[3] Section 190.2, former subdivision (b) provided: "Every person whether or not the actual killer found guilty of intentionally aiding, . . . or assisting any actor in the commission of murder in the first degree shall suffer death or confinement in state prison for a term of life without the possibility of parole, in any case in which one or more of the special circumstances . . . has been charged and specially found under Section 190.4 to be true." (§ 190.2, former subd. (b), added by initiative, Gen. Elec. (Nov. 7, 1978), renumbered as § 190.2, subd. (c) by initiative, Primary Elec. (June 5, 1990).) For purposes of the analysis, there are no meaningful differences between former subdivision (b) and current subdivision (c) of section 190.2.

degree," as stated in *Dickey*, *supra*, 35 Cal.4th 884, into section 189, subdivision (e)(2). However, I agree with the majority that under the unique circumstances presented, such an assumption is not necessarily warranted. As the majority notes, Senate Bill 1437's amendments to the felony-murder doctrine abrogated a key premise on which we relied in *Dickey*. In *Dickey*, we reasoned that section 190.2, former subdivision (b), required only that a felony participant aid or assist in an underlying felony because "[a]ll persons aiding or abetting the commission of [an enumerated felony] are guilty of first degree murder when one of them kills while acting in furtherance of the common design." (*Dickey*, at p. 900.) That premise no longer holds. Following the Legislature's adoption of Senate Bill 1437 (Stats. 2018, ch. 1015), a felony participant's liability for murder is limited to the specific instances enumerated in section 189, subdivision (e). Thus, while *Dickey* does lend some support to the Attorney General's proposed interpretation, I agree with the majority that the circumstances present an unusual case in which we should not assume the Legislature necessarily intended to adopt our prior interpretation of language used in an earlier enacted statute.[4]

According to the majority, several contextual reasons support its conclusion that the plain meaning of section 189, subdivision (e)(2) requires the felony participant to aid in the killing itself, rather than merely aid in the underlying felony.

---

[4] I also agree with the majority's conclusions that the legislative history does not support the Attorney General's proposed interpretation over its interpretation, and that its proposed interpretation would not lead to illogical results. (Maj. opn., *ante*, at pp. 18–27.)

The reasons offered do not strongly support the majority's interpretation.

First, the majority notes that the Legislature used the term "underlying felony" elsewhere in section 189, namely in subdivision (e)(3). (Maj. opn., *ante*, at pp. 10–12.) According to the majority, the fact that the Legislature used the term "underlying felony" elsewhere in section 189 indicates that it did not intend the term aiding a "murder in the first degree" (§ 189, subd. (e)(2)) to mean merely aiding in an underlying felony. However, the same can be said about the majority's proposed interpretation. The Legislature used the term "killing" in subdivisions (a) and (d) of section 189 when referring to a lethal act that causes a death, as well as in numerous neighboring provisions of the Penal Code. (§§ 187, subd. (a), 188, subd. (b), 190, subd. (d), 190.2, subd. (a)(10), (13).) Similarly, the Legislature used the term "actual killer" in section 189, subdivision (e)(1) and (2) when referring to the person or persons that most directly perpetrate the killing. To the extent the Legislature's use of the term "underlying felony" elsewhere in section 189 indicates that it did not intend aiding in the commission of murder in the first degree to mean aiding in the underlying felony, its use of the terms "killing" and "actual killer" would similarly indicate it did not intend aiding in the commission of murder in the first degree to simply mean aiding in the killing.

The majority also contends that the Attorney General's proposed interpretation would create surplusage within section 189, subdivision (e)(2). The majority notes that the preamble to subdivision (e) states that, to be liable for felony murder, a defendant must first be "[a] participant in the perpetration or attempted perpetration of a felony listed in

9

subdivision (a) in which a death occurs . . . ."  In light of the preamble, the majority concludes that interpreting the phrase "aid[ing] . . . or assist[ing] . . . in the commission of murder in the first degree" to include aiding in the underlying felony would render the entire 21-word clause at the end of section 189, subdivision (e)(2) surplusage.  (Maj. opn., *ante*, at pp. 12–14.)

I agree with the majority's general point that, if the Legislature intended to require a felony participant who acts with intent to kill to do no more than aid the killer in the underlying felony, the language used in section 189, subdivision (e) is cumbersome and not a straightforward way to do so.  However, I do not share the majority's view that such an interpretation renders the final 21 words in subdivision (e)(2) surplusage.  Section 189, subdivision (e) imposes an initial requirement that the person participate in an enumerated felony "in which a death occurs."  It does not, however, specify *how* that death must occur during the felony.  Subdivision (e)(2) then includes three clauses, each of which adds an additional element.  The first clause requires that the participant not be "the actual killer" (thus distinguishing subd. (e)(1)).  The second clause requires that the participant act "with the intent to kill." (§ 189, subd. (e)(2).)  The final, 21-word clause — the one the majority refers to — requires that the participant aid or assist the *actual killer* in the commission of murder in the first degree. (*Ibid.*)  In other words, the final clause sets a limitation on how the death must occur during the felony:  *one* of the participants in the felony must be the actual killer, or person directly responsible for the victim's death.   The third clause in subdivision (e)(2) thus serves to exclude cases where, for example, the circumstances causing the death are too tangentially related to any felony participant's conduct, such

that no participant may reasonably be described as an actual killer. (See Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1437 (2017–2018 Reg. Sess.) as introduced Feb. 16, 2018, pp. 3, 6 [expressing concern that felony-murder liability may attach where "accidental" deaths occur during the commission of a felony, such as a fall by a victim while chasing a participant].)

Moreover, any surplusage in section 189, subdivision (e)(2) may reasonably be explained by the fact that subdivision (e)(2) mirrors pre-existing subdivision (c) of section 190.2. As discussed, subdivision (c) of section 190.2 sets forth when a jury may find a special circumstance true for nonkillers who act with intent to kill. As the Attorney General argues, the Legislature's decision to incorporate language from section 190.2, subdivision (c) into section 189, subdivision (e)(2) may reasonably reflect its intent to limit a defendant's liability for felony murder to the same conditions under which the special circumstance statute applies. Given the alternative explanation for the Legislature's use of the language, I do not view the existence of arguable surplusage as especially probative of the Legislature's intent. (See *Ferra v. Loews Hollywood Hotel, LLC* (2021) 11 Cal.5th 858, 872 ["canons of interpretation 'are not immutable rules'; they are 'guidelines subject to exceptions,'" including where competing canons point in different directions].)

Finally, the majority asserts that our opinion in *Fayed* supports its interpretation. But *Fayed* has no relevance to this case.

*Fayed* addressed an application of the financial gain special circumstance, not the felony-murder special

circumstance. (See § 190.2, subd. (a)(1); *Fayed*, *supra*, 9 Cal.5th at pp. 201–202.) The financial gain special circumstance applies where "[t]he murder was intentional and carried out for financial gain." (§ 190.2, subd. (a)(1).) In *Fayed*, the defendant paid an employee to arrange for the murder of his estranged wife. The employee in turn enlisted two associates to carry out the killing. (*Fayed*, at p. 155.) On appeal, the defendant argued that the evidence did not support the special circumstance finding because the person who stood to gain financially from the murder (his employee) was not the person who actually killed the victim (the associates whom the employee enlisted). (*Id*. at p. 201.) We rejected defendant's argument. Relying in part on the fact that section 190.2, subdivision (c) makes special circumstance findings applicable to nonkillers who aid in the murder with intent to kill, we held that it was immaterial which person — the actual killer or an intermediary — stood to reap the "financial gain" from the murder. (*Fayed*, at p. 202.)

*Fayed* says nothing about whether a felony participant must aid the killing itself, rather than the underlying felony. The defendant in *Fayed* was not convicted under a felony-murder theory, and the felony-murder special circumstance (§ 190.2, subd. (a)(17)) was not at issue.

## III.

Ultimately, section 189, subdivision (e)(2) does not perfectly correspond to either the majority's interpretation or the interpretation advanced by the Attorney General and Court of Appeal. The Legislature would have better accomplished the majority's interpretation had it stated that a felony participant who acts with intent to kill must aid or assist the actual killer in the "killing," "actual killing," or "lethal act," rather than in

the "commission of murder in the first degree." Similarly, the Legislature would have better accomplished the Attorney General's proposed interpretation had it stated, for example, that a felony participant must aid or assist the actual killer in "*either* the lethal act *or* the underlying felony." Neither the " 'text, context and structure, overall purpose, relevant case law, [or] legislative history' " provide a satisfactory answer as to what the Legislature intended to require when stating that a felony participant must, with intent to kill, aid the actual killer in the commission of murder in the first degree. (*People v. Reynoza* (2024) 15 Cal.5th 982, 1012.)

In this circumstance, the rule of lenity applies to resolve the otherwise insoluble ambiguity in the statute. The rule of lenity generally requires that, where two reasonable interpretations of a criminal statute " ' " ' "stand in relative equipoise," ' " ' " ambiguity " ' "should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation." ' " (*Nuckles*, *supra*, 56 Cal.4th at p. 611.) The rule is grounded in principles of due process for those potentially subject to criminal penalties. " 'Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability.' " (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 313.)

The rule " 'does not apply every time there are two or more reasonable interpretations of a penal statute.' " (*Nuckles*, *supra*, 56 Cal.4th at p. 611.) Rather, the rule applies " 'only if the court can do no more than guess what the legislative body intended; there must be an egregious ambiguity and uncertainty to justify invoking the rule.' " (*People v. Avery* (2002) 27 Cal.4th 49, 58.)

Where resort to other interpretative aids does not resolve the criminal statute's ambiguity, " 'the rule of lenity is a tie-breaking principle.' " (*People v. Manzo* (2012) 53 Cal.4th 880, 889.)

This case is one in which the competing interpretations stand in relative equipoise, and we can do no more than guess what the Legislature intended. The Legislature's use of the phrase aiding the actual killer "in the commission of murder in the first degree" in section 189, subdivision (e)(2), is ambiguous. Our normal interpretative aids do not resolve that ambiguity in favor of either competing interpretation offered by the parties. The rule of lenity thus operates as the appropriate tie-breaking principle. Indeed, resort to the rule is especially appropriate considering the Legislature's general ameliorative goal in enacting Senate Bill 1437 to limit the scope of the felony-murder doctrine. I therefore join the majority on this basis in adopting the construction of section 189, subdivision (e)(2) that is more favorable to defendants: a participant in a felony is liable for a murder only if that person acts with intent to kill, and aids or assists the actual killer in committing the lethal act.

**GUERRERO, C. J.**

PEOPLE v. MORRIS

S284751


Dissenting Opinion by Justice Yegan


I respectfully dissent.  One hundred seventy-five years of felony-murder precedent should not be set aside by an ambiguous statute.  I agree with the Court of Appeal opinion authored by Justice Delaney with a concurrence by Presiding Justice O'Leary, *People v. Morris* (2024) 100 Cal.App.5th 1016 (*Morris*), which applied the traditional felony-murder rule. (See also *People v. Taito* (2025) 115 Cal.App.5th 694, 704, review granted Jan. 28, 2026, S294105; *People v. Lopez* (2024) 104 Cal.App.5th 616, 621, review granted, Nov. 13, 2024, S287162 (*Lopez*); *Morris,* at p. 1020; *People v. Lopez* (2023) 88 Cal.App.5th 566, 578–579.)  The felony-murder rule and its history in California for about 175 years is fully explicated by Justice Mosk in *People v. Dillon* (1983) 34 Cal.3d 441, 465.  In my opinion, even though it may be controversial, the traditional felony-murder rule has served California well. " 'Salus populi suprema lex esto.' "  (*People v. Pacheco* (2022) 75 Cal.App.5th 207, 209 [" 'The safety of the community is the highest law' "].)   To the extent the Legislature seeks to modify it, as "interpret[ed]" by the majority (maj. opn. *ante*, at pp. 2, 9, 23), their remedy has taken the "teeth" out of the rule.

The judiciary does not judge the wisdom of legislation, and it is the business of the Legislature to define crime and the punishment, therefore.  (*In re Lynch* (1972) 8 Cal.3d 410, 414.) When the Legislature announces an unambiguous rule either superseding or modifying the felony-murder rule, I will follow

1

it.  They have not done so and the language seized upon by the majority, "interpreting" Penal Code section 189, subdivision (e)(2),[1] is, in my opinion, a judicial stretch.  There is way too much "interpretation" going on here.

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1015) is not going to win an award for clarity.  Subdivision (e)(2) of section 189, enacted in 2018, does not say that the aider and abettor must have "aided" or "assisted" the actual killer *in the "lethal act."* (Maj. opn. *ante*, at p. 10.)  This is "added" by the majority opinion.   The Legislature uses the words "aided" or "assisted" the killer "in the commission of first degree murder."  (§ 189, subd. (e)(2).)  As indicated in the underlying Court of Appeal majority opinion, the latter phrase is a description of what crime is at issue, i.e., "a legal term of art." (*Morris*, *supra,* 100 Cal.App.5th at p. 1025.)  The statute is not " 'plain and unambiguous.' " (Maj. opn. *ante*, at p. 10, quoting *Morris*, *supra*, at p. 1031 (dis. opn. of Moore, J.).)  An example of the Legislature's choice of language being "plain and unambiguous" would be this statement of intent:  "The traditional felony murder rule is abolished.  Participation in the underlying felony which results in murder, standing alone, no longer supports a murder conviction."

The majority opinion here declares that the language chosen by the Legislature satisfies the statutory construction rules.  That is to say, the statute passes the "plain and common sense" test and is "clear." (Maj. opn. *ante*, at pp. 10, 11.)  Well, it was not "plain and common sense" and "clear" to Justice Delaney, Presiding Justice O'Leary, Justice Sanchez, Justice

---

[1]     All further statutory designations are to the Penal Code.

Motoike, Justice Gooding, Justice Hanasono, Justice Egerton, Justice Adams, Justice Slough and Justice Miller. It is not "plain and common sense" to the Chief Justice. (Conc. opn. of Guerrero, C. J.) And, it is not "plain and common sense" and "clear" to me. "We may not rewrite the statute to conform to an assumed intention that does not appear in its language." (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 253.) And, neither the California Supreme Court nor the Court of Appeal should "interpret" a statute by adding words to it, to reach a result it thinks furthers an ambiguous goal. I disagree that adding language is the most "natural reading" of the new statute. (Maj. opn. *ante*, at p. 10.)

Any person who conspires with and aids the actual perpetrator of the lethal act (the person who physically delivers the fatal injury by, e.g., shooting) and commits the underlying felony with a criminal mindset of committing only the underlying felony, should have liability pursuant to the felony-murder rule. Now there is something in addition: the defendant must "aid[]" or "assist[]" the actual perpetrator of *the lethal act*. (§ 189, subd. (e)(2).) It must be emphasized that, traditionally, the actual perpetrator of the "lethal act" (*ibid.*) need not even strike a blow nor shoot the murder victim. The killing may be "inadvertent" or "accidental" and the felony murder rule would apply. (*People v. Washington* (1965) 62 Cal.2d 777, 781.) If the victim dies of a heart attack upon seeing a home intruder, each other intruder is guilty of felony murder. The underlying enumerated felonies are so inherently dangerous to human life that those who commit the underlying felony should be strictly liable for any death as a result thereof.

It is common knowledge that a criminal is emboldened when he or she has an accomplice who aids in the criminal

enterprise. In the typical felony murder case, an accomplice who aids in the underlying felony is a willingly "major participant" who is acting with a "reckless indifference" to any homicide which results from the commission of the underlying felony. (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1021.)

The rule of lenity, relied upon by the Chief Justice, is well known. (*People v. Alberts* (1995) 32 Cal.App.4th 1424, 1426 (opn. of Yegan, J.).) In my view, it has no application here. The statute is ambiguous and we should not "save" it with an imaginative interpretation. We should not have to "interpret" (maj. opn. *ante*, at pp. 2, 9) or "guess" at what the Legislature intended.

The facts of the instant case demonstrate an uncharged conspiracy and sophisticated plan to commit, at the very least, residential burglary and armed robbery. And, appellant Richard Morris, Jr., did assist even under the new majority "interpretation" of the felony-murder rule. He helped to handcuff the victim in his bedroom before the victim was executed. It is much easier for an actual murderer to execute the victim if he is handcuffed. It appears that the only reason why appellant was not in the bedroom assisting in the actual shooting, is because he was busy forcibly raping the murder victim's girlfriend in another bedroom.

**YEGAN, J** [*]

---

[*] Associate Justice of the Court of Appeal, Second Appellate District, Division Six, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Morris

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 100 Cal.App.5th 1016
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S284751
**Date Filed:** May 4, 2026

_____

**Court:**  Superior
**County:**  Orange
**Judge:**  Lewis W. Clapp

_____

**Counsel:**

Pauline E. Villanueva, under appointment by the Supreme Court, and Robert F. Somers, under appointment by the Court of Appeal, for Defendant and Appellant.

Galit Lipa, State Public Defender, and Samuel Weiscovitz, Deputy State Public Defender, for the Office of the State Public Defender as Amicus Curiae on behalf of Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Chief Assistant Attorneys General, Michael R. Johnsen, Lynne G. McGinnis, Collette C. Cavalier, Alan L. Amann and James M. Toohey, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Pauline E. Villanueva
Appellate Defenders, Inc.
555 West Beech Street, Suite 300
San Diego, CA 92101
(619) 696-0282

James M. Toohey
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101
(619) 738-9043